IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                              Plaintiff,<br><br>v.<br><br>TYLER LOUDON,<br><br>                              Defendant. | Civil Action No.  24-cv-622 |

## COMPLAINT

Plaintiff Securities and Exchange Commission ("SEC") files this Complaint against Defendant Tyler Loudon ("Loudon"), and alleges as follows:

## SUMMARY

1. This case concerns Loudon's unlawful insider trading in the securities of TravelCenters of America Inc. ("TA"), a full-service truck stop and travel center company headquartered in Ohio. On February 16, 2023, TA announced that it had agreed to be acquired by BP p.l.c. ("BP"), a British multinational oil and gas company. Prior to the announcement, Loudon misappropriated from his wife, a BP mergers and acquisitions manager, material, nonpublic information regarding the planned acquisition. In a breach of his duty of trust and confidence to his wife, Loudon misused this information to purchase 46,450 shares of TA stock. After the announcement, TA's stock price jumped 70.8%. Loudon immediately sold all his TA stock, generating more than $1.76 million in illicit trading profits.

2. By engaging in the conduct alleged herein, Loudon violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Exchange Act Rule

10b-5 [17 C.F.R. § 240.10b-5]. Accordingly, the SEC seeks a permanent injunction, an officer-and-director bar, disgorgement with prejudgment interest, and a civil penalty.

## JURISDICTION AND VENUE

3. The Court has jurisdiction over this action under Sections 21(d), 21(e), 21A, and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), 78u-1, and 78aa]. Loudon directly or indirectly made use of means or instrumentalities of interstate commerce, or of the mails, or the facilities of a national securities exchange, in connection with the transactions, acts, practices, and courses of business alleged herein.

4. Venue in this district is proper under Section 27 of the Exchange Act [15 U.S.C. § 78aa] because certain acts, practices, transactions, and courses of business constituting the violations alleged herein occurred within this district.

## DEFENDANT

5. **Tyler Loudon**, 41, is a resident of Houston, Texas. Loudon holds a Master of Business Administration degree from Pepperdine University and is currently employed by a publicly traded company. He is not registered with the SEC in any capacity.

## OTHER RELEVANT ENTITIES

6. **TravelCenters of America Inc.** was a full-service truck stop and travel center operator incorporated in Maryland with its principal place of business located in Westlake, Ohio. TA's common stock was registered on Nasdaq and traded under the symbol, "TA." On May 15, 2023, TA was acquired by a wholly owned indirect subsidiary of BP.

7. **BP p.l.c.** is a multinational oil and gas company incorporated in England and Wales. BP's principal executive office is in London, England, and its principal U.S. office is in Houston, Texas. BP's ordinary shares are listed on the London Stock Exchange and the Frankfurt

Stock Exchange. BP's American Depository Shares are registered on the New York Stock Exchange and trade under the symbol, "BP."

## FACTS

### BP's Acquisition of TA

8. In April 2022, BP and TA executed a confidentiality agreement regarding a potential strategic relationship. Two months later, BP indicated to TA that it might be interested in making an offer to acquire TA. In November 2022, TA granted BP access to a virtual data room containing confidential financial information to enable BP to conduct its due diligence regarding a potential acquisition of TA. In December 2022, BP submitted an initial offer to acquire TA for $60 per share. On February 7, 2023, BP submitted a revised (and final) offer to acquire TA for $86 per share. The following day, TA's board of directors directed its management to negotiate the company's sale to BP. On February 16, 2023, TA publicly announced that it had agreed to be acquired by BP for $86 per share in cash.

### Loudon Obtains Material, Nonpublic Information Regarding the Deal

9. In October 2021, Loudon's wife began working as a mergers and acquisitions manager at BP, based in Houston, Texas. In early 2022, BP assigned Loudon's wife to work on BP's potential acquisition of TA. According to BP's standard practice, she received an "in the know" notification that she could not trade in TA's stock. In May 2022, BP reassigned Loudon's wife to another task, but added her back to the TA team in November 2022 when the negotiations accelerated.

10. During most of this time, Loudon and his wife generally worked in home offices within 20 feet of each other. As a result, they frequently overheard and witnessed each other's work-related conversations and video conferences. In late December 2022, Loudon and his wife traveled to Rome, staying in a small Airbnb where Loudon's wife regularly worked on the TA

acquisition and discussed the deal while Loudon was seated nearby. After returning from Rome, Loudon and his wife continued to work in close quarters through the February 16, 2023 acquisition announcement. Loudon's wife acknowledged discussing aspects of the acquisition with Loudon during the normal course of marital communications. Loudon knew, or was severely reckless in not knowing, that information regarding potential BP deals, including the acquisition of TA, was material, nonpublic information that he had a duty to keep confidential.

### Loudon's Insider Trading

11. On December 27, 2022, Loudon began accumulating shares of TA stock. Over the next seven weeks, Loudon methodically sold all positions in both his individual brokerage account and his Roth IRA (totaling approximately $2.16 million) to purchase additional shares of TA stock. In January 2023, Loudon purchased approximately $80,000 worth of other equities before liquidating them the following month to finance more purchases of TA stock.

12. On February 15, 2023, TA's share price closed at $49.94. By that point, Loudon held 46,450 shares of TA stock worth approximately $1.82 million. The following morning, TA announced that it was being acquired by BP. This announcement caused TA's share price to rise to $84.43. Loudon immediately liquidated all of his TA holdings for a realized profit of $1.76 million.

13. Loudon did not tell his wife about his purchases or sales of TA stock.

### The Discovery of Loudon's Insider Trading

14. In late March 2023, FINRA requested a deal chronology from BP, including the names of individuals who were "in the know" prior to BP's acquisition of TA. A former BP employee, who had worked on the TA acquisition, reached out to Loudon's wife complaining that BP's lawyers had demanded her home address and other personal information. Loudon's

wife shared this conversation with Loudon, who asked if current employees would receive the same scrutiny. Loudon's wife responded that they would.

15. One week later, on April 3, 2023, Loudon confessed to his wife that he had traded in TA prior to the acquisition announcement. Loudon did not tell her the number of shares he purchased or the profits he realized from their sale. Loudon told his wife that he had bought the TA shares because he wanted to make enough money so that she did not have to work long hours anymore. Stunned by this revelation, Loudon's wife reported the trading to her supervisor at BP. In turn, BP placed her on administrative leave. BP reviewed Loudon's wife's emails and texts, finding no evidence that she knowingly leaked the acquisition to Loudon or otherwise knew of her husband's trading. BP nonetheless terminated her employment.

16. After Loudon's confession, Loudon's wife moved out of their house and generally ceased all contact with Loudon. A few weeks later, Loudon delivered a handwritten note to his wife apologizing for violating her trust and asking for her forgiveness. Loudon's wife initiated divorce proceedings in June 2023.

## CLAIM FOR RELIEF

**Loudon Violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)]
and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5]**

17. The SEC realleges and incorporates by reference each and every allegation contained in the paragraphs above.

18. By engaging in the acts and conduct alleged herein, Loudon, directly or indirectly, in connection with the purchase or sale of a security, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, knowingly or with severe recklessness:

    (a)     employed a device, scheme, or artifice to defraud; and/or

 (b) made an untrue statement of material fact, or omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

 (c) engaged in an act, practice, or course of business which operated or would operate as a fraud or deceit upon any person.

19. By reason of the foregoing, Loudon violated, and unless enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5].

### PRAYER FOR RELIEF

THEREFORE, the SEC respectfully requests that the Court enter a Final Judgment that:

A. Permanently enjoins Defendant Loudon from violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5];

B. Prohibits Defendant Loudon, pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)];

C. Orders Defendant Loudon to disgorge all ill-gotten gains received as a result of the violations alleged herein, plus prejudgment interest on those amounts, pursuant to the Court's equitable powers and Sections 21(d)(3), 21(d)(5), and 21(d)(7) of the Exchange Act [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)];

D. Orders Defendant Loudon to pay civil penalties under Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)]; and

E. Grants such further relief as the Court deems just and proper.

Date: February 22, 2024	Respectfully submitted,

<u>/s/ *Jason J. Rose*</u>
JASON J. ROSE
Texas Bar No. 24007946
S.D. Tex. Bar No. 1070896
SECURITIES AND EXCHANGE
COMMISSION
Burnett Plaza, Suite 1900
801 Cherry Street, Unit 18
Fort Worth, Texas 76102
(817) 978-1408 (jjr)
(817) 978-4927 (facsimile)
rosej@sec.gov

ATTORNEY FOR PLAINTIFF
SECURITIES AND EXCHANGE
COMMISSION